```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------X
ROBERT JOHN AMATO,

                   Plaintiff,
                                          MEMORANDUM & ORDER
          -against-                       18-CV-1693 (JS)

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                   Defendant.
--------------------------------------X
APPEARANCES
For Plaintiff:     Howard D. Olinsky, Esq.
                   Olinsky Law Group
                   250 South Clinton Street, Suite 210
                   Syracuse, New York 13202

For Defendant[1]:  Artemis Lekakis, Esq.
                   Rukhsanah L. Singh, Esq.
                   United States Attorney's Office
                   Eastern District of New York
                   271 Cadman Plaza East
                   Brooklyn, New York 11201
```

SEYBERT, District Judge:

Plaintiff Robert John Amato ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), challenging the Commissioner of Social Security's (the "Commissioner") denial of his application for social security disability insurance benefits. (Compl., D.E. 1, ¶ 1.) Pending before the Court are the parties' cross-motions for judgment on the pleadings. (Pl. Mot., D.E. 12; Comm'r Mot.,

---

[1] Edwin R. Cortes' motion to withdraw as counsel (D.E. 20) is GRANTED.

D.E. 15.)  For the following reasons, Plaintiff's motion is GRANTED IN PART and DENIED IN PART and the Commissioner's motion is DENIED.

BACKGROUND[2]

On May 5, 2015, Plaintiff filed for disability insurance benefits, alleging that since January 1, 2012, bilateral knee pain (status post five surgeries), a torn shoulder (status post surgery), a hernia (status post surgery), sleep apnea, and a heart condition have rendered him disabled.  (R. 62, 71.)  After Plaintiff's claim was denied, (R. 76-80), he requested a hearing before an Administrative Law Judge ("ALJ"), (R. 86).  On April 13, 2017, Plaintiff appeared with his attorney for a hearing, during which a vocational expert testified.  (R. 37-61.)  At the hearing, Plaintiff's attorney requested that his alleged onset date be amended to January 1, 2014.  (R. 41.)  In a decision dated July 5, 2017, the ALJ found that Plaintiff was not disabled from his amended alleged onset date of January 1, 2014 through his date last insured, December 31, 2015. (R. 22-31.)  On January 11, 2018, the Social Security Administration's Appeals Council denied Plaintiff's request for review and the ALJ's decision became the final decision of the Commissioner.  (R. 1-3.)

---

[2] The background is derived from the administrative record ("R") filed by the Commissioner on June 19, 2018.  (R., D.E. 8.)  For purposes of this Memorandum and Order, familiarity with the administrative record is presumed.  The Court's discussion is limited to the challenges and responses raised in the parties' briefs.

2

Plaintiff filed this action on March 19, 2018 and moved for judgment on the pleadings on September 17, 2018. (Pl. Br., D.E. 13.) The Commissioner opposed Plaintiff's motion and cross-moved for judgment on the pleadings on November 15, 2018. (Comm'r Br., D.E. 16.) Plaintiff opposed the Commissioner's motion and replied in further support of his motion on December 7, 2018. (Pl. Opp., D.E. 18.)

## DISCUSSION

I. The ALJ's Decision

The ALJ determined that Plaintiff had the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 CFR 404.1567(a),[3] except [Plaintiff] can[:]
> - lift up to 10 pounds occasionally,
> - sit 6 hours and stand or walk 2 hours per 8 hour work day, with normal breaks.
>
> He can[:]
> - never climb ladders, ropes or scaffolds, can
> - occasionally climb ramps and stairs, and can
> - occasionally balance, stoop, kneel, crouch and crawl.
>
> He can[:]
> - occasionally reach overhead with the left upper extremity and

---

[3] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

3

- must avoid exposure to hazards such as moving machinery and unprotected heights.

(R. 27 (bullet points added).)  The ALJ found that while Plaintiff was unable to perform his past relevant work as a "metal melter" or a "traveling jewelry sales person," (R. 29-30), considering his RFC, age, education, and work experience, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed through the date he was last insured, (R. 30).  The ALJ determined that as a result, Plaintiff was not disabled.  (R. 31.)

II.  <u>Analysis</u>

Plaintiff argues that "[t]he ALJ failed to follow the treating physician rule[ ] by subordinating the opinions of three different treating and one examining source to non-examining medical interrogatories based on illegitimate and entirely speculative reasoning."  (Pl. Br. at 12.)  Specifically, he contends (1) "the ALJ's blanket allegations that [the three treating sources'] opinions were not supported by the record is simply not true," and that they are supported by objective findings and testing as well as the opinion of a consultative examiner, (Pl. Br. at 14-16); (2) contrary to the ALJ's finding, Plaintiff had been receiving more than conservative treatment, (Pl. Br. at 16-17); and (3) the ALJ's statement that the treating sources' opinions were "more sympathetic than objective" and were produced

4

"for the purpose of assisting [Plaintiff] in obtaining disability benefits" is speculative, defamatory, and lacks a factual or legal basis, (Pl. Br. at 17-19).  Plaintiff asks the Court to remand this case solely for the calculation of benefits.  (Pl. Br. at 19-20.)

The Commissioner argues that (1) the ALJ properly weighed the evidence and found the treating sources' opinions to be unsupported by the record, (Comm'r Br. at 19-24); (2) the opinion of a non-examining medical expert provides substantial evidence in support of the RFC, (Comm'r Br. at 24-25); (3) the ALJ properly discounted the consultative examiner's opinion because he examined Plaintiff after the date last insured, (Comm'r Br. at 25-26); (4) Plaintiff's activities during the relevant period exceeded what he claimed he could do during that time, (Comm'r Br. at 26); (5) Plaintiff did not follow medical advice to follow through with treatment, diet, and exercise, (Comm'r Br. at 26-27); and (6) the ALJ's comment about Plaintiff's treating sources was "simply a comment made after explaining that the record does not support such severe restrictions," (Comm'r Br. at 27).

A.   Psychiatric Review Technique

Before reaching the parties' arguments, the Court notes that Plaintiff received mental health treatment (though the treatment began after his date last insured).  (R. 25; see R. 676-730 (reflecting mental health treatment).)  Without providing

5

analysis, the ALJ concluded at step two that "[t]here is no evidence that any psychiatric condition produced greater than a de minimis effect on his ability to engage in work related activity prior to [the date last insured]." (R. 25.) However, the ALJ did not follow the "'psychiatric review technique' (sometimes referred to as a 'special technique')" in reaching that conclusion. See Wilson v. Colvin, No. 14-CV-0187, 2015 WL 1609727, at *4 (N.D.N.Y. Apr. 10, 2015) (citing 20 C.F.R. §§ 404.1520a(b)-(e), 416.920a(b)-(e)) (additional citations omitted). This technique, which ALJs are required to apply when mental impairments are at issue, "helps [ALJs] first determine whether claimants have medically[ ] determinable mental impairments" and "also enables [them] to determine subsequently whether medically[ ] determinable mental impairments are severe (a Step 2 issue) and whether they meet or are equivalent in severity to any presumptively disabling mental disorder (a Step 3 issue)." Id. at *4-5.

Here, "ALJ Kilgannon . . . neither referenced nor applied the psychiatric review technique" even though the record contained the opinion of Plaintiff's treating psychologist. Id. at *5; (R. at 629-36.) The Court cannot say that this error was harmless, and "remand is appropriate for [ ] application and documentation of the 'special technique' for evaluating mental impairments at 20 C.F.R. §§ 404.1520a and 416.920a." See Wilson, 2018 WL 1609727, at *6-8.

6

B.  Treating Physician Rule

The Court next addresses the parties' arguments regarding the treating physician rule.

1.  Opinions

Robert Lippe, M.D., is an orthopedist who began to treat Plaintiff for pain in his left shoulder and right knee on January 22, 2015.  (R. 519-21; see R. 25.)  He saw Plaintiff frequently throughout 2015.  (R. 514-16, 522-40, 616-21.) Dr. Lippe completed a form on March 24, 2015, providing the following opinion:  Plaintiff's pain and symptoms would constantly and severely interfere with his attention and concentration; he could sit ten minutes at a time and stand fifteen to twenty minutes at a time; he could sit less than two hours and stand or walk less than two hours in an eight-hour workday; he needs to shift between sitting, standing, and walking at will; he could occasionally lift less than ten pounds, but never ten pounds or more; and he could frequently feel, occasionally reach and handle, and never bend, stoop, crawl, push, pull, climb, kneel, or squat.  (R. 487.)

On June 21, 2015, Dr. Lippe gave another opinion.  He first diagnosed periscapular pain, cervical radiculitis, shoulder impingement, and lumbago syndrome, then identified positive clinical findings to support the diagnoses.  (R. 490-91.)  He listed Plaintiff's primary symptoms as pain, numbness, and fatigue, and he noted constant pain in both of Plaintiff's

7

shoulders, as well as in his right knee, neck, and back (including the spine). (R. 491-92.)

With regard to functional limitations, Dr. Lippe opined as follows: Plaintiff could sit two hours and stand or walk up to one hour in an eight-hour workday; Plaintiff could not sit continuously, and would need to move around for approximately five to ten minutes approximately every twenty to thirty minutes; he could not continuously stand or walk; he could frequently lift or carry up to five pounds, occasionally lift or carry five to ten pounds, and never lift or carry anything ten pounds or more; he is limited in repetitive tasks; he has marked bilateral limitations in reaching and grasping and moderate limitations in fine manipulation; his symptoms would increase in a competitive work environment and his condition would interfere with his ability to keep his neck in a constant position; he would constantly experience severe symptoms that would interfere with attention and concentration; he is not a malingerer; he would need unscheduled breaks of approximately thirty minutes approximately every twenty to thirty minutes; he would have good days and bad day and be absent more than three times per month; and he "is unable to work at any capacity due to constant pain, muscle spasm, fatigue and weakness." (R. 492-97.)

The next opinion stems from Plaintiff's treatment by Neil Dash, M.D., Plaintiff's longtime doctor, and Physician's

8

Assistants ("PA") Michael Hoffman and Lauren Morasse from Dr. Dash's office. (See generally R. 308-60.) On June 10, 2015, PA Hoffman completed a "Multiple Impairment Questionnaire," noting treatment every four months beginning January 2009. (R. 498-505.) Among other things, he diagnosed back herniation, knee pain, and bilateral rotator cuff issues. (R. 498.) He remarked that Plaintiff experienced constant pain in his foot, knees, lower back, and shoulders. (R. 499.) He rated Plaintiff's levels of pain and fatigue as an eight and ten out of ten, respectively. (R. 500.)

PA Hoffman assessed the following functional limitations: Plaintiff could sit for one hour and stand or walk for one hour in an eight-hour workday, and he could not sit, stand, or walk continuously; he would need to get up and move around for ten minutes every twenty minutes; he could frequently lift or carry up to five pounds, occasionally lift or carry five to ten pounds, and never lift or carry anything ten pounds or more; he would be limited in repetitive tasks; he has moderate bilateral limitations in grasping, turning, and twisting objects, using his fingers and hands for fine manipulation, and using his arms for reaching; his symptoms would likely increase in a competitive work environment; his ability to keep his neck in a constant position would be affected by his condition; he would frequently experience symptoms severe enough to interfere with his attention and concentration; emotional factors--anxiety and depression--contribute to the

9

severity of his symptoms and limitations; he is not a malingerer; he could not tolerate work stress; he would need to take ten-minute breaks every thirty minutes; and he would miss work more than three times per month. (R. 500-05.)

Orthopedist Douglas Barkin, M.D., completed a "Multiple-Impairment Questionnaire" on March 1, 2017. (R. 731-35.) He noted that he treated Plaintiff monthly beginning November 13, 2015 (shortly before the date last insured). (R. 731.) He documented Plaintiff's left shoulder and knee pain, as well as stiffness and loss of strength. (R. 731-32.) He rated Plaintiff's pain and fatigue as eight on a scale of one to ten. (R. 733.) Regarding functional limitations, Dr. Barkin opined that: Plaintiff could sit and stand or walk up to one hour per eight-hour workday; he would need to get up and move around for ten minutes every ten minutes, and he could not sit continuously in a work setting (though it would not be "necessary or medically recommended for [him] not to stand/walk continuously in a work setting"); he could occasionally lift or carry up to ten pounds, but never more than that; and he had significant limitation in repetitive actions. (R. 733-34.) Three pages from Dr. Barkin's opinion are missing, an issue the Commissioner should address on remand. (See R. 734 ("Page 4/8"), R. 735 ("Page 8/8").)

Chaim Shtock, D.O., saw Plaintiff for an orthopedic consultative examination on January 3, 2017 (after Plaintiff's

10

date last insured). (R. 638-48.) Dr. Shtock's opinions appear in narrative form as part of his orthopedic examination, (R. 638-42), as well as in a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)," (R. 643-49). Plaintiff complained of pain in his lower back and pain and muscle spasms in his left shoulder. (R. 638.) Dr. Shtock noted that Plaintiff is morbidly obese, weighing 404 pounds, and "ambulates with a slow, limping, short-stepped gait." (R. 639.) He was unable to squat beyond one-quarter of a full squat, declined to walk on his heels and toes, and presented with a cane prescribed by a spine orthopedist in 2011. (R. 639-40.) Plaintiff had poor reflexes, a positive straight leg raise bilaterally at thirty degrees while seated, and a decreased range of motion in his shoulders (with more restrictions in the left shoulder), lumbar and thoracic spines, hips, and knees. (R. 640-41.) He diagnosed a host of conditions and gave a prognosis of "[g]uarded." (R. 641.) Dr. Shtock opined as follows:

> [Plaintiff] has a moderate to marked limitation with heavy lifting. [He] has marked limitation with squatting, moderate to marked limitation with kneeling, and marked limitation with crouching. [He] has moderate to marked limitation with frequent stair climbing, moderate to marked limitation walking long distances, moderate to marked limitation with standing long periods, and moderate limitation with sitting long periods. [Plaintiff] has moderate to marked limitation with frequent bending. [He] has mild limitation performing overhead activities

11

>
> using the right arm. [He] has moderate limitation performing overhead activities using the left arm. [Plaintiff] has no limitation using both hands for fine and gross manual activities. [He] has no other physical functional deficits in my opinion.

(R. 641.)

In the Medical Source Statement Dr. Shtock completed on the same day, which provides his opinion on Plaintiff's limitations in specific areas, he assessed the following functional limitations: Plaintiff could frequently lift or carry up to ten pounds; he could sit fifteen to twenty minutes without interruption and stand or walk twenty to twenty-five minutes without interruption; sit up to four hours and stand or walk up to two hours in an eight-hour workday; he requires a cane, without which he could only walk four to six steps; he has no limitation in reaching, handling, fingering, feeling, pushing, or pulling with his right hand, but he could never reach overhead with his left hand and could only occasionally otherwise reach with his left hand; he could occasionally climb stairs, ramps, ladders, and scaffolds, balance, stoop, kneel, crouch, and crawl; he has certain environmental limitations; he could not perform activities like shopping; he could not walk a block at a reasonable pace on rough or uneven surfaces; and he could not climb a few steps at a reasonable pace without a handrail. (R. 643-48.)

12

On April 30, 2017, at the ALJ's request, (R. 750), orthopedist Louis Fuchs, M.D., completed a medical interrogatory. (R. 751-61.) Dr. Fuchs reviewed Plaintiff's records but did not examine Plaintiff. (R. 750.) He opined as follows: Plaintiff could continuously lift or carry up to ten pounds, occasionally lift or carry eleven to twenty pounds, and never lift or carry more than that; he could sit, stand, or walk an hour at a time without interruption; he could sit six hours and potentially (there is a question mark next to these boxes on the medical source statement) stand or walk up to two hours each during an eight-hour workday; he "perhaps at times?" would require a cane to ambulate; he could occasionally reach overhead bilaterally and continuously reach, handle, finger, feel, push, and pull bilaterally; he could occasionally climb stairs and ramps, balance, stoop, kneel, and crouch but never crawl or climb ladders or scaffolds; he has certain environmental limitations; he could shop and perform ordinary daily activities; and he does not meet any listings, such as listing 1.04A or 1.02A/B, because exams showed him to be "intact neuro wise + limbs are effective though diminished." (R. 751-61.)

## 2.   The ALJ's Findings

The ALJ (1) grouped the opinions of treating physicians Dr. Dash/PA Hoffman, Dr. Lippe, and Dr. Barkin together and gave them "less weight" because (a) "the medical evidence and [(b)] the treatment the claimant received do not support such extensive

13

limitations," as "treatment since [Plaintiff's] amended alleged onset date has been conservative and routine," and (c) "[i]t appears that these medical source statements are more sympathetic than objective, and were produced for the purpose of assisting the claimant in obtaining disability benefits."  (R. 29.)  The ALJ gave (2) consultative examiner Dr. Shtock's opinion "some weight, as it is based upon a complete physical examination" but "was performed over a year after [Plaintiff's] fully insured status had expired."  (R. 29.)  The ALJ gave (3) the opinion of non-examining source Dr. Fuchs "great weight, as [he] reviewed the entire record and is considered an expert in the field.  Moreover, this opinion is consistent with the objective evidence in the file, and is also in accordance with the routine conservative treatment claimant has undergone, with no surgeries, etc. since the amended alleged onset date."  (R. 29.)

The treating sources' (and consultative examiner's) opinions were largely consistent with each other but ran counter to that of non-examining source Dr. Fuchs.  For instance, (1) Dr. Lippe opined that Plaintiff could <u>sit two hours</u> and <u>stand or walk up to one hour</u> in an eight-hour workday, could <u>not sit continuously</u>, and would need to <u>move around</u> for approximately five to ten minutes <u>approximately every twenty to thirty minutes</u>; (2) PA Hoffman found that Plaintiff could <u>sit for one hour</u> and <u>stand or walk for one hour</u> in an eight-hour workday, could <u>not sit, stand,</u>

14

or walk continuously, and would need to get up and move around for ten minutes every twenty minutes; (3) Dr. Barkin remarked that Plaintiff could sit and stand or walk up to one hour per eight-hour workday, would need to get up and move around for ten minutes every ten minutes, and could not sit continuously in a work setting; and (4) Dr. Shtock opined that he could sit up to four hours and stand or walk up to two hours in an eight-hour workday, sit only fifteen to twenty minutes without interruption, and stand or walk only twenty to twenty-five minutes without interruption. Against these consistent opinions, Dr. Fuchs opined that Plaintiff could sit six hours and stand or walk up to two hours each during an eight-hour workday, and sit, stand, or walk one hour at a time without interruption.

The ALJ violated the treating physician rule by failing to give "'good reasons'" for the weight he assigned to treating sources' medical opinions. Estrella v. Berryhill, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013)). He elevated the opinion of a non-examining source over the consistent opinions of three treating sources (and one consultative examiner) without adequate explanation.

First, the ALJ stated that the treating sources' opinions are not consistent with the record, but he did not explain that position. The only concrete example the ALJ gave is that "it is unclear why the doctors so severely restrict [Plaintiff],

15

especially in sitting, standing and walking, when the medical record notes [he] is able to walk thirty minutes without difficulty." (R. 29.) Not only was that treatment note about walking for thirty minutes made in the context of a cardiologist's assessment (and thus, relevant more to Plaintiff's heart issues than his joint impairments and pain), it is from February 19, 2016, after Plaintiff's date last insured. (R. 302.) In other portions of the opinion, the ALJ refused to consider material from after the date last insured. (R. 29 ("But since the doctor indicates that treatment with him commenced after [Plaintiff's] date last insured, it is given no weight.").)

  In any event, the one example the ALJ gave is not enough to override the consistent opinions of three treating sources (and a consultative examiner) in favor of a non-examining agency source. Contrary to the ALJ's statement, objective evidence in the record does support the treating physicians' opinions, but the ALJ did not "grapple with" this evidence. See Estrella, 925 F.3d at 97. For instance, Robert Iadevaio, M.D., began treating Plaintiff for pain management on September 17, 2015. (R. 445.) He noted reduced range of motion, a positive bilateral straight leg raise at twenty-five degrees, and lumbar and paraspinal tenderness. (R. 445-47.) Dr. Lippe's examination notes show "pain, muscle spasm, diminished flexibility," and other issues with Plaintiff's neck; impingement signs in the right shoulder; several problems in the left shoulder,

16

(e.g., R. 488); "bilateral lumbar paraspinal spasm and . . . tenderness"; and "positive straight leg raise on the left" side, (e.g., R. 617). Moreover, in his June 10, 2015 opinion, Dr. Lippe provided his diagnoses and extensive notes about the "positive clinical findings that demonstrate and/or support [his] diagnosis," a fact that the ALJ did not address. (R. 490.)

There is more objective evidence in the form of diagnostic imaging. MRI results from August 2015 showed disc herniation deforming the thecal sac and a general worsening of condition since an April 2013 MRI of the lumbar spine. (R. 624-26 (August 2015 MRI report); R. 447 (Dr. Iadevaio's notes regarding MRI); see R. 555-56 (2013 MRI report of the lumbar spine showing issues such as "L3/4 disc desiccation, bulging and a posterior disc herniation with thecal sac deformity and bilateral foraminal encroachment"); see also R. 565-66 (2013 report of MRI of right knee showing "lateral patellar subluxation with partial tearing of the medial patellofemoral ligament," among other things).) A lower left extremity sonogram from June 2015 showed "[m]oderate to severe plantar fasciitis." (R. 361.) A June 2015 MRI of the left foot revealed "[s]evere peroneus longus tendinosis with complete rupture of the tendon from the first metatarsal base and mild proximal retraction. Torn fibers are markedly abnormal in signal and markedly frayed and there is associated peroneal

17

tenosynovitis distally." (R. 384-85.) Additionally, it showed "moderate scarring of the plantar fascia" and "mild Achilles tendinosis and retrocalcaneal spur formation." (R. 385.) A February 2015 MRI revealed a partial tear of Plaintiff's left rotator cuff. (R. 517-18.) The ALJ does not reconcile this evidence with his decision to discount the treating sources' opinions.

Second, the ALJ does not explain how Plaintiff's course of treatment has been "conservative" and "routine." (R. 29.) To be sure, some of the treatment pre- and post-dates the relevant period, but the record reflects that Plaintiff had multiple surgeries on his left knee--most recently in 2012, (R. 638)--and received injections during the relevant period, (e.g., R. 592-93 (for shoulder impingement syndrome); R. 465 (for lumbar radiculopathy).) The Court also notes that while some injections provided "100% pain relief" for up to two weeks, the symptoms returned. (R. 379, 448.)

Third, the ALJ discounted the opinions of the three treating physicians, in part, because he believed the opinions to be exaggerations meant to assist Plaintiff in obtaining disability benefits. (R. 29.) Putting aside the propriety of this remark, the Court finds that it is unsupported by the record, and it is not a reason to disregard the physicians' opinions.

In light of the above, remand is required. However, the Court will not remand solely for the calculation of benefits as Plaintiff requests, "because the record does not lead to the definitive conclusion that Plaintiff is disabled." See Portal v. Saul, No. 17-CV-5503, 2019 WL 4575391, at *5 (E.D.N.Y. Sept. 20, 2019). Instead, the Court remands for further proceedings consistent with this Memorandum and Order. Additionally, given the ALJ's unsupported remark concerning the treating physicians' perceived motivations, "on remand, the Commissioner should consider whether reassignment to a new ALJ is warranted." Id. Finally, upon remand, "[t]he Court encourages the Commissioner to expressly address all the factors for evaluating opinion evidence in the SSA regulations. See 20 C.F.R. § 404.1527(c). Moreover, if the opinion of a non-examining expert is again given more weight than any opinion from Plaintiff's treating physician(s), the Commissioner must clearly explain why it is appropriate to credit a physician who did not examine Plaintiff over one who did." Id. at *4 n.6 (citing 20 C.F.R. § 1527(f)(2)).

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

CONCLUSION

For the foregoing reasons, Plaintiff's motion (D.E. 12) is GRANTED IN PART and DENIED IN PART and the Commissioner's motion (D.E. 15) is DENIED. This matter is REMANDED for proceedings consistent with this Memorandum and Order. Counsel's motion to withdraw (D.E. 20) is GRANTED.

The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:   September  30 , 2019
         Central Islip, New York